1
2024 CO 63In Re the Application for Water Rights of Lazy D Grazing Association in Weld County. Opposers-Appellants City of Sterling and City of Fort Collins, v. Lazy D Grazing Association, Applicant-Appellee and Basin Lands, LLC; Bijou Irrigation Company; Bijou Irrigation District; Cache La Poudre Water Users Association; City of Boulder; City of Englewood; City of Greeley, acting by and through its Water and Sewer Board; City of Thornton; L.G. Everist, Inc.; Northern Colorado Water Conservancy District; Mary Estabrook; State Engineer and Division Engineer for Water Division No. 1; and United Water and Sanitation District. Opposers-Appellees No. 23SA258Supreme Court of Colorado, En BancSeptember 30, 2024

          Appeal
from the District Court District Court, Water Division 1,
Case No. 20CW3113 Honorable Todd Taylor, Water Judge

2

         
Attorneys for Opposer-Appellant City of Sterling: Curtis,
Justus, & Zahedi, LLC Alan E. Curtis Nicoli R. Bowley
Westminster, Colorado

         
Attorneys for Opposer-Appellant City of Fort Collins: Fort
Collins City Attorney's Office Eric R. Potyondy Fort
Collins, Colorado

         
Attorneys for Applicant-Appellee: Lawrence Custer Grasmick
Jones & Donovan, LLP Bradley C. Grasmick Wesley S. Knoll
Richard LiPuma Johnstown, Colorado

          No
appearance on behalf of: Basin Lands, LLC; Bijou Irrigation
Company; Bijou Irrigation District; Cache La Poudre Water
Users Association; City of Boulder; City of Englewood; City
of Greeley, acting by and through its Water and Sewer Board;
City of Thornton; L.G. Everist, Inc.; Northern Colorado Water
Conservancy District; Mary Estabrook; State Engineer and
Division Engineer for Water Division No. 1; and United Water
and Sanitation District.

         
JUSTICE HOOD delivered the Opinion of the Court, in which
CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT, JUSTICE
GABRIEL, JUSTICE HART, JUSTICE SAMOUR, and JUSTICE
BERKENKOTTER joined.

3

         
OPINION

          HOOD
JUSTICE

         ¶1
In this appeal, we address whether a large ranch in northern
Colorado has the right to use a vast deposit of a rare and
valuable commodity in our increasingly arid state:
groundwater. The water court sitting in Greeley determined
that groundwater under the property managed by the Lazy D
Grazing Association ("Lazy D") is nontributary;
meaning, the water is not subject to the prior appropriation
system and that Lazy D, as the overlying landowner, is
entitled to use it.

         ¶2
The City of Sterling and the City of Fort Collins
(collectively, "the Cities") opposed and now appeal
that decision. They assert that (1) the State Engineer
exceeded his authority in determining that the groundwater in
question was nontributary and (2) the water court improperly
presumed the truth of the State Engineer's findings,
relied on sources not in evidence, and discredited expert
evidence without justification.

         ¶3
We disagree with the Cities. In a thorough order, the water
court largely got the law right, and the few errors it made
were harmless. We therefore affirm the water court's
decision that Lazy D is authorized to withdraw and use the
nontributary groundwater from the Upper Laramie Aquifer
underlying the ranch it manages.

4

         I.
Facts and Procedural History

         ¶4
Lazy D manages a nearly 25,000-acre ranch along the
Colorado-Wyoming border ("the Ranch"). The Ranch
has very little access to surface water for irrigation; it
contains only seasonal streams. So in 2020, Lazy D sought a
determination from the water court that the groundwater
underlying the Ranch in the Upper Laramie Aquifer is
nontributary as defined in section 37-90-103(10.5), C.R.S.
(2024) (defining "[n]ontributary groundwater" as
"groundwater, located outside the boundaries of any
designated groundwater basins in existence on January 1,
1985, the withdrawal of which will not, within one hundred
years of continuous withdrawal, deplete the flow of a natural
stream . . . at an annual rate greater than one-tenth of one
percent of the annual rate of withdrawal").

         ¶5
This requested designation prompted the interest of many
other Colorado water users because nontributary groundwater
isn't subject to Colorado's prior appropriation
system, § 37-92-103(3)(a), C.R.S. (2024), and the party
who owns the surface property over the water completely
controls its use, § 37-90-137(4)(b)(II), C.R.S. (2024).
Fearing that a nontributary designation would injure their
existing water rights in the over-appropriated South Platte
and Cache la Poudre River Basins, see City of Thornton v.
Bijou Irrigation Co., 926 P.2d 1, 71 n.66 (Colo. 1996),
various individuals, municipalities, and nonprofit
organizations opposed

5

Lazy D's application. Lazy D resolved its issues with all
the opposers except the Cities, and the case moved to trial
with only the Cities as opposers.

         ¶6
Before trial, the State Engineer published his determination
of facts regarding the groundwater underlying the Ranch
pursuant to section 37-92-302(2)(a), C.R.S. (2024). In
relevant part, the State Engineer found that the Upper
Laramie Aquifer beneath the Ranch is "predominantly
confined"[1] (and therefore physically separated from
the surface water) except along the southern edges of the
property. In these unconfined portions, the aquifer sits
beneath one permanent stream-Lone Tree Creek-and several
intermittent streams. The State Engineer found that the
aquifer is physically separated from Lone Tree Creek, as it
sits significantly below the alluvium[2] of all intermittent streams.
The State Engineer then found that

6

[w]ithdrawal of groundwater from the Upper Laramie [A]quifer
underlying the land claimed in the application will not,
within one hundred years of continuous withdrawal, deplete
the flow of a natural stream at an annual rate greater than
one-tenth of one percent of the annual rate of withdrawal and
therefore the groundwater is nontributary . . . .

         ¶7
During the trial, dueling experts testified. Lazy D's
expert, Walter Niccoli, opined that the Upper Laramie Aquifer
was completely hydraulically disconnected from surface
streams, so withdrawal from the aquifer would have no effect
on natural stream flow. The Cities' expert, Timothy
Crawford, countered with his conclusion that a hydraulic
connection did exist at points.

         ¶8
In its findings of fact, the water court acknowledged that
the State engineer's determinations were entitled to a
presumption of truth under section 37-92-305(6)(b), C.R.S.
(2024), which the Cities failed to rebut. The water court
then found "by clear and convincing [evidence] that the
groundwater in the Upper Laramie Aquifer is physically and
hydraulically separated from the water in the overlying
surface stream systems and their alluvium." And it
determined as a matter of law that "Lazy D is . . .
entitled to a decree for all nontributary

7

groundwater within the Upper Laramie Aquifer underlying its
property." The Cities appealed.[3]

8

         II.
Analysis

         ¶9
The Cities raise four primary challenges to the water
court's order. After briefly detailing the relevant
standards of review and our interpretive principles, we
address each challenge in turn.

         A.
Standards of Review and Principles of Statutory
Interpretation

         ¶10
"[W]e review questions of water law and 'the water
court's legal conclusions de novo.'" Wolfe
v. Jim Hutton Educ. Found., 2015 CO 17, ¶ 9, 344
P.3d 855, 859 (quoting City of Englewood v. Burlington
Ditch, Reservoir & Land Co., 235 P.3d 1061, 1066
(Colo. 2010)). This includes questions of statutory
interpretation. See Antero Treatment LLC v. Veolia Water
Techs., Inc., 2023 CO 59, ¶ 11, 546 P.3d 1140,
1145. In interpreting statutes, "[o]ur primary duty . .
. is to give effect to the intent of the General Assembly,
looking first to the statute's plain language."
Id. (quoting Vigil v. Franklin, 103 P.3d
322, 327 (Colo. 2004)). In doing so, "we look to the
entire statutory scheme in order to give consistent,
harmonious, and sensible effect to all of its parts."
Chirinos-Raudales v. People, 2023 CO 33, ¶ 13,
532 P.3d 1200, 1203 (quoting Bill Barrett Corp. v.
Lembke, 2020 CO 73, ¶ 14, 474 P.3d 46, 49).

         ¶11
"[T]he water court's resolution of the factual
issues presented will not be disturbed on appeal unless the
evidence is wholly insufficient to support the
decision." City & Cnty. of Denver ex rel. Bd. of
Water Comm'rs v. Middle Park Water Conservancy
Dist., 925 P.2d 283, 286 (Colo. 1996).

9

         B.
The State Engineer's Authority to Determine That
Groundwater is Nontributary

         ¶12
The Cities first contend that the State Engineer lacked the
authority to determine that the groundwater in question was
nontributary and, therefore, that the water court improperly
gave this determination a presumption of truthfulness. While
we agree that the water court erred, we see no basis for
reversal.

         ¶13
As to the water at issue here, the "water judge shall
consider the state engineer's determination as to such
groundwater as described in section 37-92-302(2) in lieu of
findings made pursuant to section 37-90-137" and then
give those findings of fact a rebuttable presumption of
truth. § 37-92-305(6)(b). Subsection 302(2)(a) is broad:
It provides that for such groundwater, the State Engineer
shall make "a determination as to the facts of such
application," but it doesn't specify which facts the
State Engineer may (or may not) determine. §
37-92-302(2)(a).

         ¶14
The Cities argue that subsection 305(6)(b)'s reference to
findings in lieu of those made pursuant to section 37-90-137
imposes a limitation on subsection 302's broad mandate.
They suggest that only those facts that the State Engineer is
entitled to find under section 37-90-137-namely, whether
there is unappropriated water available, whether the proposed
well would materially injure the vested water rights of
others, and whether the proposed well is within 600 feet from
an existing well-are entitled to the presumption of
truthfulness. § 37-90-137(2)(b)(I).

10

         ¶15
But reading subsection 305(6)(b) within its larger context
belies this interpretation. As relevant here, subsection
305(6)(a) provides that for determinations of water rights in
tributary groundwater, "the water judge . . .
shall consider the findings of the state engineer, made
pursuant to section 37-90-137, which granted or denied
the well permit and the consultation report of the
state engineer or division engineer submitted pursuant to
section 37-92-302(2)(a)." § 37-92-305(6)(a)
(emphases added). The reference in subsection 305(6)(b) to
findings in lieu of those made under section
37-90-137, when read against the reference in subsection
305(6)(a) to findings made pursuant to section
37-90-137, distinguishes the scope of the water judge's
obligation to apply the presumption of truth based on the
location of the water in question.[4] It doesn't curtail the
State

11

         Engineer's
authority to make findings (or the water judge's
obligation to presume their truth) under subsection 302. The
State Engineer is thus well within his right to determine the
facts regarding whether groundwater is nontributary.

         ¶16
What the State Engineer can't do when an applicant files
a petition for a determination of water rights with the water
court, though, is make the final determination that
groundwater is or isn't nontributary. In this instance,
the State Engineer is authorized to issue only a
"determination as to the facts" of an
application for nontributary water rights, §
37-92-302(2)(a) (emphasis added), and the water court need
give a presumption of truth only to "the state
engineer's findings of fact contained within
such determination," § 37-92-305(6)(b) (emphasis
added). But whether "water underlying a particular
parcel of land is nontributary . . . is a mixed question of
fact and law," with the "characteristics of the
aquifer" constituting facts and their application
"to the legal standards of the Groundwater Management
Act" constituting law. Chatfield E. Well Co. v.
Chatfield E. Prop. Owners Ass'n, 956 P.2d 1260,
1271-72 (Colo. 1998).

         ¶17
Here, in addition to finding facts regarding the
characteristics of the Upper Laramie Aquifer, the State
Engineer found that "the groundwater is nontributary

12

as defined in section 37-90-103(10.5)"-a legal
conclusion. And the water court gave this legal conclusion a
presumption of truth when it uniformly applied the
presumption to the entirety of the State Engineer's
determinations. This was error. But this error was ultimately
harmless because the water court went on to conclude that the
groundwater underlying the Ranch was nontributary "even
in the absence of this presumption." See C.A.R.
35(c) ("The appellate court may disregard any error or
defect not affecting the substantial rights of the
parties.").

         C.
Burden of Proof for Demonstrating the Groundwater at Issue is
Tributary

         ¶18
Next, the Cities argue that in applying section
37-92-305(6)(b)'s presumption of truthfulness, the water
court improperly shifted the burden of proof and required the
Cities to prove that the groundwater underlying the Ranch was
tributary.

         ¶19
"All ground water in Colorado . . . is presumed to be
tributary absent clear and convincing evidence to the
contrary." Colo. Ground Water Comm'n v. N.
Kiowa-Bijou Groundwater Mgmt. Dist., 77 P.3d 62, 70
(Colo. 2003). Lazy D, as the party asserting that the
groundwater beneath its Ranch is nontributary, from start to
finish had the burden of persuasion before the water court.
See Stonewall Ests. v. CF&I Steel Corp., 592
P.2d 1318, 1320 (Colo. 1979) (relying on Safranek v. Town
of Limon, 228 P.2d 975, 977 (Colo. 1951)). Section
37-92-305(6)(b)'s presumption didn't change this.
See Bd. of Assessment Appeals v. Sampson, 105 P.3d
198, 205 (Colo. 2005);

13

People v. Gallegos, 692 P.2d 1074, 1078 (Colo.
1984). That presumption regarding the truthfulness of the
State Engineer's findings of fact in this context merely
"imposes upon the party against whom it is directed the
burden of going forward with evidence to rebut or meet the
presumption." CRE 301; see also Schenck v. Minolta
Off. Sys., Inc., 802 P.2d 1131, 1133 (Colo.App. 1990)
("[A] presumption 'disappears' . . . 'when
direct and credible evidence supports a contrary
conclusion.'" (quoting City & Cnty. of
Denver v. DeLong, 545 P.2d 154, 157 (Colo. 1976))). If
the opposing parties, here the Cities, rebut the factual
presumption by providing direct and credible evidence
supporting a contrary conclusion, the water court must then
analyze both parties' evidence in evaluating whether the
applicant has satisfied its burden of persuading the water
court by clear and convincing evidence that the groundwater
is nontributary.

         ¶20
At trial, Crawford presented evidence that contradicted the
facts found by the State Engineer. For example, Crawford
testified that the static water level in several wells along
Spring Creek, a permanent stream southwest of the Ranch, was
higher than the base of the nearby alluvium, indicating a
hydraulic connection between the Upper Laramie Aquifer and
Spring Creek. This expert evidence directly and credibly
rebutted the claim that the Upper Laramie Aquifer is
completely hydraulically disconnected from the groundwater,
so the Cities

14

presented evidence sufficient to rebut the presumption.
See Schenck, 802 P.2d at 1133.

         ¶21
The water court's statement that "opposers have not
rebutted the presumption that the Engineer's findings of
fact are true" was, therefore, erroneous. But the water
court applied the presumption correctly in practice: The
court treated the presumption as rebutted, assessed the
credibility of both parties' evidence, and then concluded
that Lazy D had satisfied its burden of persuasion that the
groundwater was nontributary by clear and convincing
evidence. Contrary to the Cities' argument, the water
court never shifted the burden of persuasion to the Cities to
prove that the groundwater was tributary. Accordingly, the
water court's error here, too, was harmless.

         D.
The Water
Court's Reliance on
Personal Knowledge
and

         Information
Not in Evidence

         ¶22
The Cities insist that the water court improperly relied on
scientific information that wasn't in evidence. We
disagree.

         ¶23
A court may not consider information outside of the record in
reaching its ultimate conclusions, see, e.g.,
Anderson v. Lett, 374 P.2d 355, 357 (Colo. 1962);
Prestige Homes, Inc. v. Legouffe, 658 P.2d 850,
853-54 (Colo. 1983), unless such information is "not
subject to reasonable dispute," CRE 201(b). In
Prestige Homes, for example, we determined that the
court of appeals acted improperly by using medical treatises
not in evidence to conclude that "an electric shock
caused by

15

contact with a 220 volt power line can cause serious injury
without leaving a visible burn mark" when the
parties' experts disputed this fact. 658 P.2d at 853-54.

         ¶24
But courts may, and often do, consider treatises and other
secondary sources to understand the subject matter underlying
complex cases. See, e.g., Colo. Ground Water
Comm'n, 77 P.3d at 69 (referencing the Colorado
Geological Survey's Ground Water Atlas's statistic
that "[g]round water supplies approximately eighteen
percent of our state's water needs" as background);
Upper Black Squirrel Creek Ground Water Mgmt. Dist. v.
Goss, 993 P.2d 1177, 1182 n.5 (Colo. 2000)
(incorporating by reference a scientific paper that provided
a detailed "explanation of the hydrological
interrelationship between tributary ground water and surface
water" into our background description of Colorado's
water law governance).

         ¶25
The Cities identify ten instances in which the water court
allegedly improperly relied on sources not in evidence. These
references can be divided into two categories. The first
category includes references that define geological
terms[5]

16

and are examples of perfectly acceptable background citations
akin to those in North Kiowa-Bijou and Upper
Black Squirrel.

         ¶26
The second category includes references to scientific
documents that support Niccoli's (Lazy D's expert)
interpretations (and therefore contradict the Cities'
expert's interpretations) of scientific
principles.[6] While at first glance the water
court's use of these references may appear similar to the
court of appeals' improper reliance on medical treatises
in Prestige Homes, there is a key distinction. In
Prestige Homes, the court of appeals took judicial
notice of the treatises' scientific conclusions and
relied on them as objectively true. 658 P.2d at 853. But the
water court here didn't; it merely used the references as
evidence of the weight of the scientific authority on the
disputed facts. For example, in crediting Niccoli's
opinion that withdrawals from the Upper Laramie Aquifer
don't affect the aquifer's recharge rate, the water
court explained that Niccoli's "explanation is
consistent with other authority," and then quoted an
article by Herman Bower and Thomas Maddock, III-Making
Sense of the Interactions Between Groundwater and Streamflow:
Lessons for Water Masters and Adjudicators, Rivers, Vol.
6, No. 1, at 28

17

(1997)-as an example of other authorities. The
external references therefore don't independently form
the basis for the water court's ultimate holding that the
groundwater at issue was nontributary; the evidence that
Niccoli presented does. These external references are
acceptable, and the water court didn't err by including
them.

         E.
Expert Testimony Under CRE 702

         ¶27
Finally, the Cities maintain that the water court violated
CRE 702 by not making specific findings as to why
Niccoli's testimony was more credible or reliable than
Crawford's.

         ¶28
To be admissible, expert testimony must be both relevant and
reliable. Est. of Ford v. Eicher, 250 P.3d 262, 266
(Colo. 2011). Trial courts are vested with broad discretion
to determine the admissibility of such evidence. Id.
We've held, however, that a trial court should make
"specific findings" regarding the factors it
considered in determining admissibility, including its CRE
403 considerations. Id.; see also Bocian v.
Owners Ins. Co., 2020 COA 98, ¶¶ 65-66, 482
P.3d 502, 516 (explaining that admissibility of CRE 702
evidence is based on the totality of the circumstances and
consideration of a non-exhaustive list of factors). But once
a court determines expert testimony is admissible, it is for
the trier of fact to resolve any issues of credibility and to
determine how much weight to accord the evidence. See,
e.g., People v. Fasy, 829 P.2d 1314, 1318
(Colo. 1992); In re Marriage of

18

Bookout, 833 P.2d 800, 804 (Colo.App. 1991). And
neither CRE 702 nor caselaw requires the trier of fact to
explain its considerations in this regard. Moreover, the
water court thoroughly explained why it found Niccoli's
testimony more credible than Crawford's; including, for
example, that Crawford's answers during cross-examination
contradicted the opinions he provided on direct examination
and actually supported Niccoli's opinions.

         ¶29
Therefore, because neither party disputes the experts'
qualifications or the admissibility of their testimony,
there's no ground for reversal on that basis.

         III.
Conclusion

         ¶30
We affirm the water court's order and return this case to
the water court for further proceedings consistent with this
opinion.

---------

Notes:

[1] A "confined aquifer" is an
aquifer bound both above and below by impermeable material.
U.S. Geological Surv., What is the difference between a
confined and an unconfined (water table) aquifer?,
https://www.usgs.gov/faqs/what-difference-between-a-confined-and-unconfined-water-table-aquifer#:~:text=A%
20confined%20aquifer%20is%20an,the%20top%20of%20the%20aquifer
[https:// perma.cc/7YX3-NKTJ]. Conversely, an
"unconfined aquifer" contains no upper impermeable
layer, resulting in the aquifer's water table sitting at
atmospheric pressure. Id.

[2] "Alluvium" is the
"clay, silt, sand, gravel, or similar detrital material
deposited by running water"-the subsurface material
under a surface stream. Alluvium, Merriam-Webster
Dictionary,
https://www.merriam-webster.com/dictionary/ alluvium
[https://perma.cc/V82Z-78ND]. Water flowing through
a surface stream's alluvium is considered part of the
surface stream. § 37-92-102(1)(b), C.R.S. (2024)
(defining “natural surface stream” to include the
stream's “underflow”); see Underflow, A
Dictionary of Ecology (4th ed. 2010), https://
www.oxfordreference.com/display/10.1093/acref/9780199567669.001.0001/
acref-9780199567669-e-5800 (last visited Sept. 9, 2024)
(defining “underflow” as “[t]he flow of
groundwater in alluvial sediments, parallel to and beneath a
river channel”).

[3] The Cities presented the following
issues in their opening brief:

1. Whether the District Court for Water Division 1
(Water Court) erred in ruling C.R.S. § 37-92-305(6)(b)
(Subsection 305(6)(b)) gives the Colorado State Engineer
(State Engineer) authority to determine groundwater is
nontributary.

2. Whether the Water Court, based on its
interpretation and application of Subsection 305(6)(b), erred
in ruling the burden of proof shifted from Applicant-Appellee
Lazy D Grazing Association (Lazy D) having to prove its
nontributary claims by clear and convincing evidence to the
Cities having to prove the groundwater at issue (Subject
Groundwater) is tributary.

3. Whether the Water Court, based on its
interpretation and application of Subsection 305(6)(b), erred
in the standard it applied to the Cities' rebuttal of the
State Engineer's Determination of Facts, dated March 31,
2021 (State Engineer's Determination of Facts).

4. Whether the Water Court erred by speculating and
relying on personal knowledge and information not in
evidence.

5. Whether the Water Court determined the Subject
Groundwater is nontributary based on faulty legal premises,
inappropriate weight accorded to expert testimony and
evidence, and is manifestly erroneous.

We combine these five issues into, essentially, four
in our opinion.

[4] Specifically, the State Engineer makes
findings in lieu of those made under section 37-90-137 in the
context of nontributary groundwater because the
adjudication of rights in nontributary groundwater
doesn't imply that the applicant has an obligation to
construct a well. E. Cherry Creek Valley Water &
Sanitation Dist. v. Rangeview Metro. Dist., 109 P.3d
154, 157 (Colo. 2005); see also § 37-90-137(6)
("Rights to nontributary groundwater outside of
designated groundwater basins . . . may include a
determination of the right to such water for existing and
future uses." (emphasis added)). Accordingly, the
applicant may not have the information necessary for the
State Engineer to make the findings section 37-90-137
requires (such as the specific proposed location of a well).
Instead, the State Engineer's findings are limited to the
facts "of [the] application." §
37-92-302(2)(a). The facts "of [the] application,"
in turn, are limited to the facts "supporting the ruling
sought." § 37-92-302(1)(a). A water court can't
rule on an application for a determination of rights in
nontributary groundwater if the facts of the application
don't seek to establish that the groundwater is, indeed,
nontributary. See § 37-92-305(11) (describing a
water court's determination of water rights in
nontributary groundwater). Thus, the State Engineer has the
authority to determine those facts under subsection
302(2)(a), and the water court is obligated to afford them a
presumption of truth under subsection 305(6)(b).

[5] For example, the Cities protest the
water court's citations to Encyclopedia Brittanica's
definition of "claystone"; to a judicial guide on
adjudicating groundwater, which provides definitions of
various kinds of sedimentary rock; and to a report published
by the U.S. Geological Survey comparing the sizes of various
geological materials.

[6] These challenged references include
scientific and legal scholarship that supports the position
that "the rate at which a surface alluvial system
recharges the Upper Laramie Aquifer is unaffected by
withdrawals from the aquifer," and a governmental
publication that supports the principle that "an
unsaturated zone between an aquifer and an overlying stream
system causes the aquifer to be hydraulically
disconnected."

---------